No. 26,833.

THE FARMERS ELEVATOR COMPANY OF BENNINGTON, *Appellee*, v. BEN F. MARKLEY and GEORGE C. MARKLEY, Partners, as THE MARKLEY LIGHT AND POWER COMPANY, *Appellants*.

SYLLABUS BY THE COURT.

1. JOINT ADVENTURES—*Liability for Property Purchased — Purchases Charged to Individual Member—Evidence.* The fact that the person ordering from time to time supplies of fuel for an industrial plant directed them to be charged to him, and that the seller made the load tickets and stubs in accordance with that direction, is not necessarily conclusive evidence that no one else was liable therefor.

2. SAME—*Sufficiency of Evidence.* The evidence is held to support a finding, implied by the general verdict, that the owner of an industrial plant was concerned in its operation and was liable for the fuel supplied to it, notwithstanding it had been charged in the manner indicated in the foregoing paragraph to his son, who was in the immediate control of the plant, in accordance with the directions of the son at the time· the order was given.

3. TRIAL—*Special Interrogatories—Definiteness of Answer.* The refusal of the trial court to require the jurors to return a more definite answer than "We don't know" to a question submitted to them is held in one instance to have been justified and in another not to have been so prejudicial as to require a reversal.

Appeal from Ottawa district court; DALLAS GROVER, judge. Opinion filed October 9, 1926. Affirmed.

*David Ritchie, Omer D. Smith,* both of Salina, and *F. D. Boyce,* of Minneapolis, for appellant Ben F. Markley.

*C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Farmers Elevator Company, of Bennington, owned an elevator at that place, and also retailed coal. An electric plant situated about a mile and a half away was owned by Ben F.

Joint Adventures, 33 C. J. p. 874 n. 78; 15 R. C. L. 505. Trial, 38 Cyc. p. 1932 n. 33.

Markley, who .held a franchise granted to "the Markley Electric Light and Power Plant," and in 1921 was operated by his son, George C. Markley. The plant had previously used oil as fuel, but early in that year changed to coal. From time to time the coal shipped in for the plant would be used up and the elevator company supplied the deficiency by some 55 deliveries, from May 9 to November 5, 1921.

It brought this action for the balance due on the price of the coal, the petition naming both the Markleys as defendants and describing them in the title as partners, although no allegation of a partnership was made in the body of the pleading. Only Ben F. Markley was served with summons, his son having become a nonresident of the state. He defended on the ground that in November, 1920, he had leased the property described as belonging to "the Markley Electric Light and Power Plant" to his son for the term of ten years, beginning January 1, 1921, and that his son alone was liable for the coal. A 'jury trial was had, resulting in a judgment for the plaintiff, from which Ben F. Markley, who will be referred to as the defendant, appeals.

A reversal is asked principally upon the contention that the evidence, and also the special findings, showed conclusively that only George C. Markley was liable for the coal; that it was ordered by him with directions to be charged to him; that the first items were in fact so charged, and that no different directions were ever given.

The following are the special findings upon which the defendant relies in this connection:

"3. Q. Did Geo. C. Markley, about the 9th day of May, 1921, request S. R. Dillinger [the plaintiff's manager and bookkeeper] to send coal to the electric light plant in question with directions to charge the same to him? A. Yes.

"4. Q. If you answer No. 3 'Yes,' then did the plaintiff furnish coal to the electric plant in question pursuant to the arrangement set forth in question No. 3? A. Yes.

"5. Q. Did Geo. C. Markley ever give to S. R. Dillinger any other directions as to how coal sent to the electric plant in question should be charged other than as directed in question No. 3? A. No.

"6. Q. Did B. F. Markley in the year 1921 order some coal from plaintiff to be sent to the electric light plant in question? A. Yes.

"7. Q. If you answer No. 6 'Yes,' then was the coal so ordered by B. F. Markley paid for by him? A. Yes."

Three additional questions and answers read as follows:

"8. Q. Was there any arrangement made between B. F. Markley and Geo.

Farmers Elevator Co. v. Markley.

C. Markley as to division of profits and losses growing out of the operation of the electric plant in question during the year 1921? A. Yes.

"9. Q. If you answer question No. 8 'Yes,' then state fully what said arrangement was. A. We do not know.

"10. Q. Did Geo. C. Markley operate the electric light plant in question on his own account during the year 1921? A. No."

1. The evidence showed that on May 9, 1921, the defendant's son ordered some coal, saying to charge it to him. The coal was loaded and weighed and a "load ticket" was made out in his name, a corresponding entry being made on the stub. As more coal was ordered and delivered the same procedure was followed. These entries were transferred to pages of the ledger under the name "Markley Power and Light Plant, Bennington, Kan.," and "Markley Light and Power Plant." George C. Markley had a personal ledger account in which were entered purchases for use at his home. The sales here involved were not entered there, but on separate leaves of the ledger. The facts that the defendant's son ordered the first coal with directions to charge it to him, that such a charge was made in the manner indicated, and that no different directions were given with respect to subsequent purchases, have a tendency to show that the understanding of the parties was that the debt created was that of the son and not of the defendant; but they are not conclusive on that point. The actual intention of the parties is what controls, and the circumstance that the seller of goods enters on his books a charge for them to one person is not wholly inconsistent with the liability of another, and is capable of explanation consistent therewith. Where a dealer who upon his books had charged the milk furnished a boarding house to the husband of the woman who was apparently running it, but sued her for payment, it was held error to refuse to permit the plaintiff to explain the method of keeping accounts whereby the charge was made against the husband rather than the wife. (*Eddy v. Church*, 118 N. Y. S. 795. See, also, cases there cited and *Lane v. Turner*, 114 Cal. 396.) In one of the cases cited in *Eddy v. Church*, it was said:

"Where goods are sold to an agent the legal presumption is that the credit is given to the principal, and entries on the books of the vendor charging the goods to the agent, though of much weight upon the question, are not conclusive evidence that the credit was given exclusively to him." (*Foster et al. v. Persch*, 68 N. Y. 400, 402.)

2. Here we think the evidence justified submitting to the jury the question of the defendant's liability, notwithstanding the charges on

the load tickets and stubs were made to the son, who ordered the coal and directed the charge to be made in that manner. The following matters deserve consideration in this connection: There is room for the inference that the direction as to the charge meant no more than that the coal was for the use of the Markley electric plant and was not to be paid for in cash; or perhaps that the son's name was to be used to show the person ordering the particular load. If a distinction between the son and his father were intended, a more specific reference might be thought more natural. The plaintiff's bookkeeper testified repeatedly that George Markley told him to charge the coal to him, but a part of his cross-examination reads:

"Q. With whom did you transact that business? A. Well, that was ordered by George Markley and they hauled it down there.

"Q. What did he say to you about it when he ordered it? A. He said to charge it to him.

"Q. To charge it to him? A. Yes, to the plant down there.

"Q. Well, didn't he say to charge it to him? A. Yes, sir."

The first three load tickets were in the name of George Markley, but from that on the charges on the tickets were made to "Markley Plant," "Geo. Markley Light Plant," "Markley Light Plant," "Markley Power and Light Plant," and various other similar names. The plaintiff's manager testified that on August 1, 1921, the defendant told him not to let George have any more coal on his account; and that later he told him to let George have some coal, without saying how much, making a payment of $200. The circumstance that the defendant told the plaintiff not to let George have any more coal on his account fairly warrants the inference that it was understood coal had been and was being furnished to the plant on his credit. The lease from the defendant to his son does not appear to have been seen by anyone but the Markleys prior to December, 1922. It purported to cover a period of ten years, beginning January 1, 1921, but George Markley testified that he operated the plant under it from about the middle of November, 1920, until some time in December, 1921. The lease provided for monthly payment of rent in advance beginning with $200 a month for 1921, annual increase being provided for, the lessor to have the right to take possession in case of a default in payment. The defendant testified that he thought he had received $50, but no other payment on the lease had ever been made. The defendant seemed unable to explain the purpose of a second lease of a similar character which was executed in December, 1921. He said he took the lease because George

was his son; that he knew he didn't have a dollar; that in a way he forfeited the lease in June, 1921; that he made some collections for electricity bills from July to December, 1921. Bills for electricity during the years 1919, 1920 and 1921 were produced, all bearing the signature "Markley Electric Light and Power Plant." There was evidence that, a corporation having been formed to take over the electric light plant, a proposition for its transfer was made by the Markleys, representing that each owned an undivided interest in it. There was also evidence of the defendant having inquired of the plaintiff's manager whether the plaintiff's board of directors would take stock in the new corporation in payment for the claim here sued upon.

3. The question was submitted to the jury, "Did B. F. Markley lease the electric plant in question to Geo. C. Markley in November, 1920?" They returned the answer, "We don't know." The defendant asked that a more definite answer be required and complains of the refusal of that request. A direct answer should have been given to the question, but we do not think the refusal to require it sufficiently important to call for a reversal. By their answers to questions 8 and 10, already set out, the jurors in effect found that the plant was not being operated under the lease, and therefore the fact of its having been executed became immaterial so far as the liability of the defendant was concerned.

Complaint is also made of the refusal of the court to require a more definite answer than "We do not know" to question No. 9, already set out, inquiring under what arrangement between the Markleys as to profits and loss the plant was operated in 1921. It was not necessary, and indeed was not possible, for the jury to determine just what the arrangement was between the defendant and his son, if they were treating the lease as a mere scrap of paper—a colorable device not intended to have and not having any effect between the parties to it. It was not essential to the plaintiff's recovery that a partnership should have been shown. We think the jury must be deemed to have found, upon sufficient evidence, either that George Markley was running the plant for his father or that they were joint adventurers with respect to it under some arrangement, knowledge of the precise character of which was not necessary to determine the question of the defendant's legal responsibility.

The judgment is affirmed.

BURCH, J., not sitting.